## Case No. 4,797.

**FIREMEN'S INS. CO. v. HEMINGWAY et al.**

[8 Ins. Law J. 520; 8 Reporter, 741.]

Circuit Court, S. D. Mississippi. Nov. Term, 1878.

Marcellus Green and George F. Harding, for plaintiff.

T. C. Catchings, Atty. Gen., Nugent & McWillie, Pitman & Pitman, Smith & Klein, O. B. Sansom, and Barrows & Smythe, for defendants.

HILL, District Judge. This cause is submitted upon bill amended, and supplemental bill, answers, exhibits, and proofs, from which the following facts appear:

The Globe Insurance Company, chartered and doing business under the laws of Illinois, desiring to transact business as insurers against loss by fire in this state, through agencies located in this state, in pursuance of the statutes of this state, on or about the 15th day of April, 1875, complied with said statutes, under the requirements of which said company deposited with the treasurer of this state the sum of $15,000 in the warrants of this state, drawn upon the treasurer, who gave a certificate therefor as required by law, drawing six per cent. interest, the payment of which the statute guaranteed to whoever might be determined entitled thereto as provided by the statute. [Laws Miss. 1875, p. 72.] Whereupon said company, through its duly appointed agents, Messrs. Barrows & Smythe and others, commenced taking risks and issuing policies of insurance against loss by fire within the state of Mississippi, and so continued until March 1, 1876, when said business ceased, and after which time no further policies were issued or business done in this state through said agents. Soon thereafter the company notified the defendant, W. L. Hemingway, the then treasurer of this state, of its intention to cease doing business in this state, and to withdraw said deposit as provided by statute.

On the 27th day of April, 1876, the Globe Insurance Company for certain considerations transferred and assigned said certificate of deposit to the Union Insurance Company, the name of which was afterward changed to the "Firemen's Insurance Company," the present complainant. A part of the consideration of such assignment was that the complainant should reinsure the policy-holders who had taken out policies through the agents so appointed in the state of Mississippi, and doing business under the statutes of this state, and which was accordingly done. Said assignment was made subject to all the legal claims and demands on said fund binding thereon under the statutes of this state. Notice of said assignment was given to Hemingway, as treasurer, about the 29th of May, 1876. The state treasurer, on the 31st of May, 1876, being satisfied that the Globe Insurance Company had become insolvent, in pursuance of the statutes of the state as amended in relation to such insurance company, gave notice by publication in the Clarion, a newspaper published in Jackson, to all persons having claims upon said company, and founded upon losses on policies issued, and for unearned premiums thereon, to the end that the same might be allowed and paid out of said fund as provided by law; and on August 4th, 1876, said treasurer did allow and pay to claimants upon said fund as follows: to Sherman H. Parisot, $2,099.16; to Wm. Mullen, $105.62; to Barrows & Smythe, $240.32; to Morris Bros., agents, $459.57, and to A. L. Davis, $27.19. It further appears that on or about the 27th of May, 1876, a petition was filed by creditors of the Globe Insurance Company in the district court of the United States for the northern district of Illinois, to have said company declared a bankrupt, and upon proceedings had thereunder said company was adjudicated a bankrupt [case unreported], and Robert E. Jenkins was duly appointed assignee thereof. That a litigation was afterward had between said Jenkins, as such assignee, and said complainant in reference to said fund, in said district court in which said adjudication was had, which resulted in a conveyance of all the interest which said assignee took in said fund to the complainant.

On May 22, 1876, Peyton S. Davidson, Nicholas Springer, and E. C. Carroll, and on May 27, 1876, Wm. E. & W. B. Hamilton and James La Burge, Jr., respectively instituted their several suits in the circuit court of Warren county, in this state, by original attachments against said Globe Insurance Company, and said Hemingway as garnishee, and to which said Globe Insurance Company interposed its plea of general issue, and said Hemingway made answer as such treasurer that he had in his hands said funds. These several suits were brought to recover the amount of losses alleged to be due upon certain marine policies of insurance issued by the Globe Insurance Company through its agents in the city of Chicago. On November 29, 1876, judgments were rendered in said suits, and against Hemingway as garnishee, in favor of La Burge for $661.40 and costs; in favor of W. E. & W. B. Hamilton for $625.25 and costs; in favor of E. C. Carroll for $1,694.35 and costs; in favor of Nicholas Springer for $662.44 and costs; in favor of said Davidson for $2,175 and costs. On August 16, 1876, complainant filed her bill in the chancery court of Hinds county, against Hemingway, treasurer, and other defendants, with some others whose claims have been compromised and need not be further noticed in the progress of this cause.

The bill charges a combination between Hemingway and his co-defendants to defraud complainant out of her just rights to said fund; charges that Hemingway paid out the sums on the 4th of August to those not entitled, and without proof of their being a lien upon the fund, and in fraud of complainant's rights, and seeks to hold him personally liable therefor; charges that the sums claimed under the attachment suits were not charges upon the fund. The bill prays for the writ of injunction to restrain said Hemingway, as such treasurer, from further proceeding to pay out said fund until the matters in relation thereto should be heard and determined by the court, which writ was duly granted, issued, and served, and is now in force. The bill further prays that upon the hearing, the said contract and assignment made on the 27th of April, 1876, between complainant and the Globe Insurance Company, be held valid and binding; that the legal and equitable rights of the claimants to said fund under the law be determined and settled by the court, and the residue of the fund, after all proper charges are paid, to be paid over to complainant. Hemingway answered the bill, admitting that he had made the payments to Parisot, Barrows & Smythe, Morris Brothers, Davis, and Muller, as charged; but denying all fraud, and insisting that said payments were a lien upon the fund, and properly paid upon legal and proper proof; that in his action in regard thereto he acted in a quasi judicial capacity, and hence was not personally responsible for any mistake of judgment into which he may have fallen. The other defendants answered denying the fraud charged, and insisted that they were respectively entitled to the payments received by them. The attaching creditors also answered denying all fraud, and insisting that the claims upon which their suits were founded were just, and a lien upon said fund. Parisot by cross bill set up a claim for loss paid for salvage of a steamer covered by his policy. After issues were made, and before hearing, the cause was removed to this court. Complainant filed her amended and supplemental bill, which, after reciting the allegations of the original bill, charges that after the filing of the original bill, by fraud and collusion between Hemingway and the plaintiffs in said attachment suits, the said judgments against the Globe Insurance Company and Hemingway, treasurer and garnishee, were obtained, and that the same are void, and constitute no just demand or charge upon said fund as against complainant's rights.

To this bill Hemingway answered, reiterating the statement of his original answer, and denying all fraud in relation to obtaining the judgments in the attachment suits. The plaintiffs in said judgments in attachment, answered the amended and supplemental bill denying all fraud, insisting that said judgments are valid, and a demand, and a legal charge upon said fund, and that the judgments are res adjudicata, and cannot be inquired into in this suit. Complainant has filed her answer to the cross bill of Parisot, and issues joined on the several answers. The pleadings and proofs are unusually voluminous, but the foregoing comprises all that need be stated to an understanding of the questions presented, and argued with ability by the different counsel representing the respective interests involved.

The first question presented is as to the title of complainant to the funds deposited with the treasurer; for if she has no title the bill must be dismissed. Neither of the conveyances under which complainant claims is denied; but it is insisted by defendants' counsel that the assignments were made subject to the claims that might be on the fund under the laws of this state. Whilst a negotiable instrument must be unconditional, such is not necessary to transfer a claim of the kind under consideration. The assignments are good on their face under the state statute, and are certainly good as equitable assignments. It is, however, urged that the first assignment was void under the bankrupt law, and that the second cannot be set up under the amended and supplemental bill. To the first objection it is only necessary to state that no one except the assignee in bankruptcy could maintain this objection, and this, under the sanction of the bankrupt law, he has waived by assigning all the interest he took under the assignment to him, to the complainant.

To the second objection it is only necessary to state that the assignment by the assignee in bankruptcy was but a confirmation of the same title, derived from the same source, and is unlike a title derived from a different person, and of a different character. I am satisfied that nothing is shown to defeat complainant's title to whatever balance may remain of said fund after all the legal claims upon it existing on April 27, 1876, shall have been satisfied, which brings us to the much more difficult question of determining what these claims are, and this involves a construction of the insurance laws of this state, but few of which have received a construction by our supreme courts. Section 2442 of the Code of 1871, reads as follows: "It shall not be lawful for any agent of any insurance company incorporated by any other state than the state of Mississippi, directly or indirectly to take risks or transact any business of insurance in this state without first procuring a certificate of authority from the auditor of public accounts; and before obtaining such certificate, such agent shall furnish to the said auditor a statement under the oath of the president or secretary of the company for which he may act, which statement shall show: 1. The name and locality of the company. 2. The amount of its capital stock. 3. The amount of its capital

stock paid in. 4. The assets of the company, including first, the amount of cash on hand, and in the hands of agents or other persons; second, the real estate unincumbered; third, bonds owned by the company, and how they are secured, with the rate of interest thereon; fourth, debts of the company secured by mortgage; fifth, debts otherwise secured; sixth, debts for premiums; seventh, all other securities. 5. The amount of liability due or not due to banks or other creditors by the company. 6. Losses adjusted and due. 7. Losses adjusted and not due. 8. Losses unadjusted. 9. Losses in suspense waiting for further proof. 10. All other claims against the company. 11. The greatest amount insured in any one risk. 12. The greatest amount allowed by the rules of the company to be insured in any one city, town or village. 13. The greatest amount allowed to be insured in any one block. 14. The act of incorporation of the company. 15. The certificate of deposit of the state treasurer, as hereinafter provided. The statement shall be filed in the office of said auditor, together with a written instrument under the seal of the company, signed by the president and secretary, authorizing such agent to acknowledge service of process for and on behalf of such company, consenting that the service of process upon such agent shall be taken and held to be as valid as if served upon the company, according to the laws of the state, and waiving all claim of error by reason of such service, and no insurance company or agent of any insurance company incorporated by any other state shall transact any business of insurance in this state, unless such company is possessed of at least one hundred and fifty thousand dollars of actual capital invested in stocks of at least par value, or in bonds or mortgages of real estate, with double the amount for which the same is mortgaged; and upon filing the aforesaid statement and instrument with the auditor, and furnishing him with satisfactory evidence of such investment as aforesaid, it shall be the duty of said auditor to issue a certificate thereof, with authority to transact business of insurance to the agent applying for the same." Section 2444 provides that such agent, before taking any risks or transacting any business of insurance in this state, shall file in the office of the chancery clerk of the county in which he may desire to establish an agency for such insurance company, a copy of the statement filed with the auditor, which also must be published in some newspaper in the county. Section 2445 requires this statement to be served, filed and published annually. Section 2446 requires that agents of such insurance companies before commencing business in this state should deposit state warrants, or cash, with the treasurer of the state, whose capital does not exceed $250,000, $15,000, and those of larger capital $20,000, and for which the treasurer

shall issue his certificate, and which shall remain on deposit as long as the company shall continue to do business in this state, and shall not be withdrawn until all losses upon such life, fire or marine risks shall be adjusted and paid, or adjudged by a court of competent jurisdiction in favor of said company, and then not until six months' notice shall have been given the treasurer of an intention of such withdrawal. Section 2447 provides that when such deposit shall have been made, the treasurer shall issue his certificate of deposit therefor, with a statement on its face that the faith of the state is faithfully pledged for the redemption of the same, and bearing interest at the rate of six per cent per annum, payable annually. Section 2450 provides that when a judgment or decree shall remain unsatisfied for the space of thirty days after the rendition thereof, that the plaintiffs may file with the state treasurer a transcript thereof, accompanied with the certificate of the clerk and sheriff of the county; that such judgment or decree remains unpaid, and that the fi. fa. has not been suspended by writ of error or appeal; that thereupon the treasurer shall pay the amount of said judgment or decree, including costs, and credit to the amount of the deposit, to be replaced in sixty days on notice to the agent, provided the treasurer shall not pay out more than the deposit in his hands, and shall not pay over any amount on such judgment or decree which may be stayed by injunction, appeal or writ of error, until the same shall have been finally determined. Section 2451 makes it a criminal offense to violate any of the provisions of the chapter of which these sections compose a part. It was soon found that companies making the deposit could withdraw and leave unearned premiums unprovided for, to amend which the act of 1873, amendatory to the foregoing sections, provided that such unearned premiums should be a charge upon such deposit, and entitled to payment under section 2450. That act further provides that when any such insurance company shall become insolvent, or shall appear so to the treasurer, he shall immediately give notice by advertisement in some newspaper of general circulation for sixty days, notifying all persons holding claims against such company for losses and unearned premiums to present the same to the treasurer duly certified, as required by the first section of the act, which is a certificate from an agent of the company that the policy has been canceled or surrendered to an agent of the company, and showing the amount of the unearned premiums so due. That at the expiration of thirty days from the publication, (which means after the end of the sixty days, and ninety days from the first publication,) he shall proceed to pay the claims against said fund, provided, if the fund is insufficient to pay all, first to losses; and if not enough for all of these,

then pro rata among them; if a residue shall remain after payment of losses, then to pay unearned premiums if enough for that purpose; if not, then pro rata upon them, and if enough to pay all these demands, and a surplus remains, to pay the same to the holder of the certificate of deposit.

Another defect in these statutes soon appeared by the agents of the company leaving the state, or absconding, or concealing themselves, so that the process provided for by section 2442 of the Code, above stated, (could not be served); so the act of 1874 [Laws Miss. 1874, p. 16] amended this section, and provided for proceedings by attachment as in cases of foreign corporations and proceedings thereunder, and subjecting the treasurer to the writ of garnishment. I have given this full recital of these statutory provisions because all of them have more or less application to the questions here involved. These statutes form a scheme to a certain end, and must be construed together. That end is to give to insurance companies chartered and doing business in other states an opportunity to establish agencies and do business in this state; but as a protection to our citizens from fictitious or insolvent companies created and doing business in other states, and to give to our citizens an opportunity to examine the law of their creation and their condition in every way, the sworn statement of their condition by their principal officers, with a copy of their charter, is required to be filed with the auditor, and also in the office of the chancery clerk in each county in which the companies by their agents may desire to do business, and where liabilities may be incurred upon policies issued through such agents, that the companies may be sued, judgment obtained, and satisfaction had without the policy-holder having to go out of the state to obtain it; hence, the agreement for service of process, and the deposit to be made with the treasurer, and the mode of reaching the funds so deposited with him; and that those taking risks may know the amount of the risks for which the deposit is liable. In other words, it is to give as far as possible these foreign insurance companies the privileges, coupled with the liabilities, of companies chartered by this state. Such being the case, the deposit is intended only for those who may obtain their policies through the agents appointed and doing business in the state, and under the provisions of our statutes. No assignment or transfer of the fund so deposited can be made so as to defeat the claims upon it for satisfaction of losses or unearned premiums upon the policies issued by such agents as provided by these statutes. Nor can such company revoke the powers of their agents so as to defeat the remedies provided by the statute, although it may for any other purpose.

So that in case such company shall cease to do business in this state, either by withdrawal of agencies or insolvency, any person holding a policy issued through such agent or agents, which has not expired, may cancel the policy or surrender it to the agent, and demand the unearned premium, which I understand to be the amount of premium due for the unexpired term of the policy. The agent is required to estimate and certify the amount due, and that the policy has been canceled or returned, which has the same effect. This certificate is by law made evidence of the cancellation or return, and the amount of the unearned premiums, but if the agent should refuse to do this duty, the policy-holder, I have no doubt, may cancel or tender the return of the policy, and make proof of its value; his redress cannot be defeated either by the failure of the agent to do his duty or by the want of such agent. After, however, all these demands have been satisfied, the fund in the hands of the treasurer is to be returned to the depositor or its assignee. It is the company and not the agent that makes the deposit, although the company acts through her agent, being incapable of any other action. After those are satisfied who have this special lien on this fund, I incline to the opinion that it is liable to other creditors of the depositor or its assignee, but under my view of the right of the parties to this suit the decision of this question is unnecessary.

Let these rules of law be applied to the facts of this case, and first as to the claims paid by the treasurer. It is admitted that the claims of Parisot are not founded upon a policy or policies issued by an agent doing business under the provisions of the statutes in this state, hence, under the construction given to this statute, are not liens or demands upon this fund, and were improperly paid by the treasurer. The claim of Muller is of the same character, and its payment was consequently improperly made. The payment made to Davis was upon a policy issued by Phelan, an agent in Tennessee, who had no authority to do business in this state, and consequently was improperly made. The payment made to Morris Bros. was upon a certificate of Phelan, whose certificate should not have been received as evidence, and there being no other evidence of the facts necessary to entitle any of said policy-holders to this fund, the payment of said claim was improper. The payment to Barrows & Smythe was made upon their own certificate for unearned premiums. The amount which is now shown by the proof to be for fees due them from the Globe Insurance Company was clearly not a claim upon the fund. It does not appear whether their claims for unearned premiums were upon policies issued by themselves or any other agent of the Globe Insurance Company doing business in this state under the statute, nor does it sufficiently appear whether or not the holders of the policies had canceled or surrendered them, as provided by

law, to entitle them to these unearned premiums, so that the evidence upon which the payment was made is insufficient, and the payment was improperly made. The result is that complainant is entitled to a decree against each of the parties to whom said payments were made, and who are parties to this cause, for the sums so improperly received by them, reserving, however, to Barrows & Smythe, and to Morris Bros., the right, if they can show by proof before the clerk as master, that any of the sums received by them were for unearned premiums on policies which had been canceled or surrendered by the policy-holders, and which policies had been issued by an agent doing business in this state under the provisions of the statute.

Complainant's counsel insist that she is entitled to a personal decree against Hemingway, the treasurer, and whether she is or not, is a question of no little difficulty. I have no doubt that in all he did he acted in good faith, and did only what he believed to be his duty. The responsible and delicate duties imposed upon him by law are of a twofold character, partly ministerial and partly quasi judicial. The reception and payment out of the fund is ministerial; that of determining the question of insolvency, of to whom payment should be made, when not ascertained by a judgment or decree of some court, is in its nature judicial, and for a mistake on this subject, honestly made and free from fraud, as I believe was the case, I can not see that he should be any more liable than a referee or any other person exercising judicial or quasi judicial functions. The action of the treasurer in such case, it is true, is not that of a court, nor does his decision bind or conclude parties, who are left free to invoke the courts to determine and enforce their rights. No construction of the statutes has been given by the courts to guide him in his action. The complainant was requested to apply to the court to guard its interests, which she declines. The treasurer consulted the law officer of the state, who advised him it was his duty to make payment on the proofs he had. Under these circumstances I do not think the complainant should ask a personal decree against the treasurer, and I decline to make it, especially as the parties to whom the money was paid are able to return it. This brings us to the consideration of the judgments rendered in the attachment proceedings by the circuit court of Warren county. It is conceded that the policies upon which these judgments were obtained, were issued by agents in St. Louis, Missouri, therefore constituted no charge upon the fund, nor do the judgments thereon, unless it be upon the surplus after payment of all the claims provided for by the statute.

It is insisted by complainant's counsel, that the attachments were dissolved by the operation of the bankrupt law, having been sued out within less than four months of the commencement of proceedings in bankruptcy. As against the assignee in bankruptcy this would be true, but this is not a proceeding by the assignee in bankruptcy to set them aside. The complainant claims the fund by a title acquired prior to bankruptcy, and prior to the issuance of the attachments, and not having been a party to these attachment suits, is not affected by them; so that it is unnecessary to consider whether they are or are not valid judgments against the Globe Insurance Company, which is not dischargeable under the law, or is a valid and fixed claim upon the assets of the Globe in bankruptcy. As already held, the title of complainant became fixed upon this fund on the 27th of April, 1876, subject to any prior demands upon it; hence these attachments and the judgments thereon could no more affect complainant's rights than such attachments and judgments would have affected the rights of any other third party, who was a stranger to the liability and suit, and whose property had been seized under the attachments.

The result is that the complainant must be declared entitled to this fund free from these judgments. This leaves but a single question, and that easily disposed of, being the cross bill of Parisot, setting up his claim for the amount claimed to have been paid him for salvage. The policy, under which it is claimed, was not issued through an agent in this state under the provisions of the statute; the claim, therefore, does not attach to this fund, and must be disallowed, and the cross bill dismissed at the cost of the complainant therein. Each of the defendants to the bill will be taxed with the costs of making him a party, and those accruing in his defense respectively, and the remaining costs by the complainant. There being no claims shown to exist upon the remaining funds in the hands of the treasurer having priority to those of the complainant, they will be paid over to her duly authorized officer, attorney, or agent, being first subject to such costs as may be taxed upon the complainant.